KELLOGG SEXTON *et al. versus* LYMAN WOOD.

The payees of a promissory note, in common form, by a contract in writing of the same date as the note, agreed to take certain goods of the promisor, and apply what they could get for them in market on such note.    It was *held,* in an action by the payee on such note, that the declaration need not set out such separate contract.

Land of a stranger being under a mortgage and the equity of redemption having been attached by his creditors, he quitclaimed to the plaintiffs all his title ; and the plaintiffs agreed to convey the land to the defendant in consideration of his promissory note.    Judgments were recovered by the creditors, which together with the debt due on the mortgage, were paid or assumed by the plaintiffs, and the plaintiffs gave the defendant a quitclaim deed of the land.    Pursuant to an understanding between the plaintiffs and the defendant, the plaintiffs caused the equity of redemption to be sold on such judgments and they purchased the same themselves for the purpose of making the defendant's title more secure.    Afterward they offered to convey the land to the defendant, without any covenant of warranty except against themselves and those claiming under them, on condition that he would pay the note, but he denied his liability to pay it and refused to take the land, and the plaintiffs then sold the land to a stranger with general warranty, and indorsed the proceeds on the note, but without authority from the defendant, and brought an action on the note for the balance.    *Held,* that these proceedings did not discharge the defendant from his liability upon the note.

ASSUMPSIT.    The declaration set forth, that the defendant, on April 16, 1834, by his promissory note, for value received promised the plaintiffs, Sexton and Pitkin, by the name of Sexton & Co., to pay them or their order the sum of $1295, on demand, with interest.    The declaration also contained a general count ; and a copy of the note was filed as a bill of particulars in the case.

At the trial, before *Morton* J., the defendant produced the following agreement, which was signed by the plaintiffs :

" Buckland, April 16, 1834.    This may certify, that we, Sexton & Co., do agree to take lather boxes of Lyman Wood and apply the same on a note given to Sexton & Co. by Ly

man Wood, and allow said Wood for the boxes what we can get in market for them by deducting the freight and expenses of selling, and apply the same on a note given by Lyman Wood, dated April 16, 1834."

The defendant thereupon contended, that this agreement and the note were parts of the same contract, and therefore, that there was a variance between the declaration and the bill of particulars, and the proof. But the judge overruled the objection.

The defendant also contended, that the note was given in pursuance of an agreement dated March 27, 1833, and that the plaintiffs, by their conduct subsequent to such agreement, had discharged the defendant from his liability on the note.

The agreement of March 27, 1833, which was signed by the defendant, was as follows :

" This may certify, that I, Lyman Wood, do agree to pay Sexton & Co. the whole amount that Merret Stetson owes to said Sexton & Co. ; which amount is not ascertained as yet ; it is supposed to be somewhere about $850 ; it is to be paid in lather boxes as fast as I, Lyman Wood, can cause them to be made ; and we, Sexton & Co., are to allow for the same what we can get in market by deducting the freight and expenses ; I, Lyman Wood, am to give my note to Sexton & Co. for the amount of what Stetson owes them, as soon as ascertained. Further, I agree to see that John Williams, of Ashfield, has what boxes are his due ; also what are Ebenezer Maynard's due."

It appeared that the note included also a debt due from the defendant.

The defendant contended, that the only consideration of this agreement was an engagement on the part of the plaintiffs to convey to the defendant certain real estate ; but there was evidence, that as part of the consideration of the agreement, the defendant received a quantity of lumber, which he had worked up ; and that he had also occupied the real estate from the date of the agreement until several months after the note was given.

It further appeared, that this real estate had been the property of M. Stetson, who, at the time when this agreement was made, was insolvent ; that M. Stetson had mortgaged it

to the Massachusetts Hospital Life Insurance Company ; that in October, 1832, the equity of redemption was attached by divers creditors of M. Stetson ; that in November, 1832, M. Stetson mortgaged it to the plaintiffs, and on March 21, 1833, quitclaimed to them all his title thereto ; that before the agreement was made, the judgments recovered by the creditors of M. Stetson, in such suits, and the debt secured by the first mortgage, had been paid or assumed by the plain· tiffs ; that on March 28, 1833, the plaintiffs executed a quit-laim deed of the real estate to the defendant, and caused it .o be recorded, and sent to him.

It further appeared, that the plaintiffs caused the equity of redemption to be sold on such judgments, and purchased the same themselves for the amount due on the executions, and the sheriff's deed was made to K. Sexton, one of the plaintiffs ; but there was no legal notice of the time and place of sale ; and there was evidence tending to show, that this was done, with the approbation of the defendant, in pursuance of the original understanding of the parties, and for the purpose of making the defendant's title good.

Afterwards, in February, 1835, the defendant having conveyed away all his estate, both real and personal, the plaintiffs took possession of the land ; and after repeatedly offering to convey it to the defendant, one of them (Pitkin) conveyed it, with covenants of warranty, to a stranger, who entered under his deed and retained possession of the land. The defendant was requested to consent to the sale and assist in it by appointing an appraiser ; but he refused, claiming that he was exonerated from the payment of the note, and had no interest in the land. The plaintiffs indorsed the amount of the consideration on the note, but without authority from the defendant. The offers to convey to the defendant were made after he had denied his liability on the note and had refused to pay it, and upon condition, that he should agree to pay it ; and to induce him to pay it, certain deductions and certain facilities in the mode of payment were proposed to him.

At the time of the settlement between the parties, on April 16, 1834, the notes of M. Stetson, which constituted a part of his indebtment, were given up to the defendant    There

was evidence, that the parties intended this to be a final settlement, and then entertained no doubt of the validity of the defendant's title to the real estate.

The defendant contended, that the foregoing facts constituted a defence to an action on the note, either on the ground of a failure of consideration, or on the ground that, by reason of the conduct of the plaintiffs, he was authorized to rescind the contract and did rescind it.

The plaintiffs contended, that the title acquired by them after their conveyance to the defendant enured to his benefit. But the defendant requested the judge to instruct the jury, that the title acquired by the sale of the equity of redemption on the execution, overreached the title obtained by the defendant by the quitclaim deed.

The judge, without giving a direct opinion on this point, instructed the jury, that, if they were satisfied that the note, at the time it was given, was intended to be absolute, and that the equity of redemption was offered for sale, and bought in by the plaintiffs with the knowledge and approbation of the defendant, and with an understanding between them that it was to be done for the purpose of making good the title of the defendant, and that the plaintiffs offered to convey to him without any covenant of warranty except against themselves and those claiming under them, this would not operate to discharge the defendant from his liability on his note.

The jury returned a verdict for the plaintiffs.

The case was argued in writing.

*Wells* and *Alvord*, for the defendant. The note and the agreement of April 16, 1834, constitute but one contract, and should have been declared on as one instrument. *Whitaker v. Smith*, 4 Pick, 83. Collateral matters, such as stipulations in regard to the settlement of damages and matters in defeasance, need not be set forth in the declaration. Whatever makes a part of the consideration, or in any way qualifies or affects the promise itself, must be stated in the declaration. *Clarke* v. *Gray*, 6 East, 564 ; *Stanwood* v. *Scovel*, 4 Pick. 422. The question then is not so much a question of pleading as of construction. Did the parties intend that the defendant should have the right to pay his debt by delivering

10 *

Sexton
v.
Wood.

lather boxes, and should not be called on to pay money until he had failed to do this, or did they intend that the plaintiffs should have a right of action immediately for the whole amount of the note, leaving the defendant to pursue his remedy, if he had one, by an action on the writing which he held ? If boxes sufficient to pay the note had been delivered, could an action afterwards be sustained on the note ? Would the defendant's only redress be a cross action on the contract of the plaintiffs ?

The instructions to the jury are exceptionable in this respect, that the jury were directed to consider the conditional offer to convey by the plaintiffs, after they had taken possession of the land and while they held the defendant out under a claim of adverse title, as equivalent to an unqualified tender of a deed or an unconditional offer to convey.

The plaintiffs are estopped by the deed of warranty given by one of them, to deny that they, or one of them, were the owners of the land in January, 1835. *Cutler* v. *Dickinson*, 8 Pick. 386. They are also equitably estopped from denying, that the contract is rescinded. The plaintiffs assumed to be owners of the land and disposed of it as they thought proper. 1 Saund. on Pl. and Evid. 37, *et seq.*

The taking possession of the land by the plaintiffs, claiming an adverse title to it, was itself a disaffirmance of the contract.

The plaintiffs' had no right to insert any conditions in their offer to convey to the defendant. If the defendant had any claim to consider the note as void or too large, he was not bound to relinquish this claim in order to entitle himself to what it was agreed that he should have at all events. No offer to convey would be of any avail, without a tender of a deed.

The conveyance of the land to a stranger destroys all the effect of the offer to convey, if it ever was of any avail. The plaintiffs at least held the land in trust for the defendant, and they had no right to place themselves in a condition which would incapacitate them from conveying the land to him. By depriving themselves of the power to convey the land, they have absolved the defendant from the necessity of making a demand for a deed. *Hopkins* v. *Young*, 11 Mass. R 302, and cases cited.

<div style="float:right">Sexton
*v.*
Wood.</div>

This is not a case where there has been an original want or subsequent failure of consideration, owing either to mutual misapprehension, or to events over which the party wishing to enforce the contract has no control. It is a case, where the party now seeking to enforce the contract has voluntarily interposed, to prevent the other party from receiving any benefit from it. Under such circumstances, we contend that the defendant has a right to rescind the contract. Chitty on Contr. 275 ; *Giles* v. *Edwards*, 7 T. R. 181.

*I. C. Bates, Dewey* and *Baker*, for the plaintiffs, to the point, that the declaration was sufficient, cited *Rawson* v. *Johnson*, 1 East, 203 ; 1 Chitty on Pl. 229, 311, 314 ; 1 Tidd's Pr. 386, 387 ; *Pordage* v. *Cole*, 1 Saund. 320, note ; *Johnson* v. *Reed*, 9 Mass. R. 78 ; *Clarke* v. *Gray*, 6 East, 564 ; *Hotham* v. *East India Company*, 1 T. R. 638 ; *Dox* v. *Dey*, 3 Wendell, 356 ; *Stanwood* v. *Scovel*, 4 Pick. 422 ; *Smith* v. *Sinclair*, 15 Mass. R. 171 ; *Stearns* v. *Barrett*, 1 1 Pick. 443 ; *Dow* v. *Tuttle*, 4 Mass. R. 414 ; Lawes's Pl. in Assumpsit, 120 ; *Cornish* v. *Bolitho*, 1 Willes, 145 ; *Williams* v. *Hingham &c. Turnpike Corp.* 4 Pick. 341 ; *Teel* v. *Fonda*, 4 Johns. R. 304 ; *Bennet* v. *Hurd*, 3 Johns. R. 438 ; and to the point, that where a person has received a portion of the consideration of a contract, the law obliges him to perform the agreement on his part, and leaves him to his action to recover any damage he may have sustained in not having received the whole consideration, 1 Chitty on Pl. 314 ; *Ritchie* v. *Atkinson*, 10 East, 295 ; *Davidson* v. *Gwynne*, 12 East, 381 ; *Bennet* v. *Pixley*, 7 Johns. R. 249 ; 3 Stark. on Evid. 1614 and note ; Chitty on Contr. 188, 275 ; *Conner* v. *Henderson*, 15 Mass. R. 319 ; *Hunt* v. *Silk*, 5 East, 449 ; *Bliss* v. *Negus*, 8 Mass. R. 51 ; *Greenleaf* v. *Cook*, 2 Wheat. 13 ; *Phelps* v. *Decker*, 10 Mass. R. 279 ; *Fowler* v. *Shearer*, 7 Mass. R. 14.

WILDE J. delivered the opinion of the Court. The first ground on which the defendant relies in support of his motion for a new trial is, a supposed variance between the note declared on, and that which was given in evidence. The note produced by the plaintiffs is in common form, and is payable n money, as set out in the writ. But the defendant contends,

that it was in fact payable in goods, and that an agreement to that effect was made between the parties at the same time when the note was given ; and so that the note and agreement were parts of the same contract, and that the plaintiffs were bound to set it out in full.    This objection would be well founded, if the agreement were that the note should be payable in goods, and that such was the promise of the defendant. But the agreement contains no such promise.    The plaintiffs agreed to receive payment in goods ; but it was left to the defendant's option, whether he would avail himself of that privilege or not.    His promise was to pay in cash, and the plaintiffs must have failed if they had declared on a promise to pay in goods.    It is however contended, that the plaintiffs were bound to set out the entire consideration of the promise, and that the privilege of paying in goods was a part of the consideration.    It might be a sufficient reply to this argument, that in a declaration on a note of hand it is not necessary to set forth the consideration particularly ; but it is clear, we think, that the agreement as to the mode of payment was no part of the consideration.    It was either an independent contract, or matter of defence ; and in either case the plaintiffs were not required to set it out in the declaration.

The next ground on which the defendant's counsel rely is, on the exceptions to the instructions to the jury.    It appeared in evidence, that at the time of the conveyance of the real estate to the defendant, there was a doubt as to the title conveyed, arising from some secret attachments ; and that afterwards the plaintiffs caused the equity of redeeming the real estate to be sold on execution, in order to avail themselves of the benefit of an attachment made prior to the conveyance from them to the defendant, and thereby to confirm the defendant's title.    One of the plaintiffs became the purchaser of the equity ; and there was evidence tending to show, that this was done with the approbation of the defendant, in pursuance of the original understanding of the parties.

On this evidence the jury were instructed, that if they were satisfied that the equity of redemption was purchased by the plaintiffs with the knowledge and approbation of the defendant. and with an understanding between them, that it

was to be done for the purpose of making good the title of the defendant, and that the plaintiffs offered to convey to him the title so purchased, this would not operate to discharge the defendant from his liability on his note. These instructions appear to us to be perfectly correct, and render the other questions raised at the trial immaterial. For as the jury, under these instructions, have found, that the plaintiffs offered to convey to the defendant the title, if any, acquired under the sale of the equity, it is of no importance whether tne purchase would enure to the defendant's benefit without any new conveyance or not. And it is clear, that as the defendant refused to receive a release of the equity, and to perform his contract, the plaintiffs had a good right to enter on the estate and to convey the title obtained under the execution, if any they had, and to indorse the proceeds of sale on the defendant's note, in order to secure themselves *pro tanto*, the defendant having before conveyed all his property. The sale of the equity was with the defendant's consent, and for his benefit ; and when he refused to take a release from the plaintiffs, how can he complain if his title has thereby been defeated ? It appears, however, that his title has not been defeated. For it seems, that the sale of the equity was void for want of legal notice of the time and place of sale ; and that the sale by one of the plaintiffs to a third person passed no estate, as he was not the purchaser at the sale at auction. The defendant's title is therefore good ; but if not, the defect has arisen from his refusal to accept a release ; and he cannot take advantage of his own wrong. Nothing has been done by the plaintiffs which can authorize him to rescind the contract.

*Judgment on the verdict.*